**UNITED STATES of America, Appellee,**

v.

**Albert TANTALO, Defendant-Appellant.**

**No. 628, Docket 81–1411.**

United States Court of Appeals, Second Circuit.

Argued Jan. 26, 1982.

Decided June 3, 1982.

---

Paul J. Cambria, Jr., Buffalo, N. Y. (Lipsitz, Green, Fahringer, Roll, Schuller & James, Barbara Davies Eberl, and Stanley J. Sliwa, Buffalo, N. Y., on the brief), for defendant-appellant.

Rosemary G. Roberts, Asst. U. S. Atty., W. D. N. Y. (Roger P. Williams, U. S. Atty., David Rothenberg, Asst. U. S. Atty., W. D. N. Y., Rochester, N. Y., of counsel), for appellee.

Before MESKILL and CARDAMONE, Circuit Judges, and HOLDEN,[*] District Judge.

HOLDEN, District Judge:

The defendant Albert Tantalo presents this appeal on two issues reserved in a negotiated plea agreement at the time he entered a plea of guilty on January 9, 1981 before the late Judge Harold P. Burke. The guilty plea to a single count superseding information which charged the defendant with simple possession of cocaine in violation of 21 U.S.C. § 844(a) was offered and accepted on October 1, 1979. The history of this prosecution from the time of the defendant's arrest as a fugitive on November 7, 1979 in the Eastern District of Virginia, to the date of his sentencing in the United States District Court for the Western District of New York by the Honorable John T. Curtin, Chief Judge,[1] is extensive and complicated. The course of these proceedings has generated the two issues for review: the right of the defendant to freedom from self-incrimination and his right to a speedy trial.

### History of the Proceedings

On October 31, 1979 a single count sealed indictment was filed in the United States District Court for the Western District of New York which charged the appellant and others with conspiracy to distribute cocaine, a Schedule II controlled substance, in violation of 21 U.S.C. § 846.[2] Bail in the arresting district was reduced from $100,000 to $50,000, following the defendant's indication that he sought to cooperate with federal enforcement agencies, whereupon he was allowed to return voluntarily to the Western District of New York.

On November 13, 1979 the appellant and his attorney met with the Assistant United States Attorney at Rochester and the appellant agreed to cooperate with federal and state enforcement authorities. The terms of the agreement were confirmed in a letter written November 15, 1979 by Assistant United States Attorney David Rothenberg, directed to the appellant's counsel Werner Lomker, Esquire, who was retained at that time.[3] Briefly stated, the appellant agreed to provide complete and truthful cooperation concerning his knowledge of criminal activities then under investigation. He further agreed to forego his right to a prompt arraignment and trial under the Speedy Trial Act (18 U.S.C. § 3161) pending his cooperation, and to execute a waiver to this effect for a period of thirty days.

The Government on its part agreed that none of the appellant's statements made after November 8, 1979 and during the time of his cooperation, nor any evidence derived from his statements, would be used against him. The communication concludes: "He will, however, be prosecuted, as originally anticipated, by this office. No other promises whatsoever have been made."

---

[*] Honorable James S. Holden, Chief Judge of the United States District Court for the District of Vermont, sitting by designation.

1. Judge Burke deceased after the appellant pleaded guilty on January 9, 1981 and before sentence was imposed by Chief Judge Curtin on September 23, 1981, pursuant to Fed.R.Crim.P. 25(b).

2. The original indictment was dismissed at the time of sentencing on September 23, 1981. A superseding indictment filed March 5, 1980 was subsequently dismissed as to the appellant on October 5, 1981.

3. Appellant subsequently retained Paul Cambria, Esquire, of Buffalo, New York, who entered the case sometime after the Government filed a statement of readiness for trial on July 8, 1980. Mr. Cambria filed an omnibus motion in behalf of the appellant on November 3, 1980 and has continued his representation of the appellant since that time. Appellant's Br. p. 2.

On December 11, 1979 the Government attempted to have the appellant personally sign the written waiver of prompt arraignment and trial indicated in the letter of November 15, 1979 to his attorney. A written waiver was signed by defense counsel, but the appellant declined.

During the period that followed, the appellant extensively cooperated by testifying before the grand jury on December 19, 1979, providing information concerning drug traffic and corruption in the Rochester area and working undercover in a joint federal-state investigation which included consensually monitored telephone calls.

At the outset of the appellant's appearance before the federal grand jury on December 19, 1979, he was advised of his right to have his attorney present, outside the room where the grand jurors convened, for consultation during the course of his testimony. The appellant stated he did not want his attorney to be present. Counsel for the Government restated the sum and substance of its agreement with defense counsel, that Tantalo was named in the indictment and that he would be prosecuted although his testimony "in the Grand Jury cannot and will not be used against you in a court of law."

The appellant then testified that on October 1, 1979 he met with Michael Scott. Scott suggested he could repay money which he owed the appellant if Scott could obtain cocaine for resale to a proposed purchaser. The appellant agreed to obtain four ounces of cocaine for delivery to Scott. Accordingly, the appellant contacted Kenneth Allnutt, who arranged for the delivery of the cocaine by a courier named "Lisa" in the Village of Honeoye Falls. Scott and the appellant drove to the meeting place in the appellant's automobile. After meeting the courier, the appellant and Lisa went for a ride without Scott. Four ounces of cocaine were delivered to the appellant. The appellant cut the cocaine to make five and a half ounces.

The appellant returned to Scott's home in Rochester. Before Scott left the car, the appellant observed what he believed to be unmarked police cars nearby. He cautioned Scott about his observation and cautioned him not to go through with any deals. He later telephoned Scott to warn him again. Apparently Scott did not heed the warning. In any event, at a later time Scott delivered the money for the cocaine to the appellant.

The appellant then proceeded to testify concerning a later purchase of cocaine from Allnutt toward the end of October, 1979. When one of the grand jurors inquired of the appellant what he did with the ounce and a half of cocaine he retained, the appellant refused to answer, stating—"I'm not going to give you some other evidence that would also incriminate me, even though you say you're not going to use it."

The appellant was not arraigned on the original indictment until February 22, 1980. The arraignment was conducted in chambers and the record was sealed.[4]

The same federal grand jury that returned the original indictment on October 31, 1979 returned a superseding six count indictment on March 5, 1980, which named six defendants, including Kenneth Allnutt, Michael Scott and the appellant. Tantalo was accused in counts 1 and 5. The first count alleged a conspiracy which was substantially the same as that charged in the original indictment. The fifth count charged the appellant, Allnutt, Scott and Lisa, a/k/a Lisa McNamee, with distribution of four ounces of cocaine on October 1, 1979, in violation of 21 U.S.C. § 841(a)(1).

The superseding indictment was sealed; it was unsealed on April 14, 1980, when Allnutt was arraigned. The appellant was not arraigned until May 16, 1980. The appellant pleaded not guilty to both counts 1 and 5. The Government moved on July 14 to set the case for trial. Owing to a two month criminal trial scheduled for September 15, 1980, the district court scheduled trial on the superseding indictment to start December 1, 1980.

4. Brief for Appellant at 7.

In the interim, as shown in the margin, the appellant retained his present counsel. On November 3, 1980 the appellant filed an omnibus motion which included a request for dismissal based on a violation by the Government of its promise of immunity under the Fifth Amendment. The appellant also sought dismissal of the original and superseding indictment under the Speedy Trial Act. The movant requested that a hearing on the multiple motions be scheduled on November 10. At the hearing on November 10 the Government requested a continuance because of the length and complexity of the motion papers. The Government urged, and Judge Burke ruled, that the ends of justice outweighed the interests of the public and the defendant in a speedy trial and would be served by the adjournment. *See* 18 U.S.C. § 3161(h)(8)(A). The court continued the case to November 24, 1980.

The district court heard oral argument on the combined motions on November 24, 1980. Defense counsel contended that the Government intended to use the testimony of one of the indicted co-defendants against Tantalo; that the co-defendant was motivated to testify at Tantalo's trial and was inspired by Tantalo's testimony before the grand jury. Defense counsel urged that since the appellant had provided immunized testimony before the grand jury, the Government was called upon to present evidence to the court to establish not only an independent basis for the indictment, but also for the prosecution itself.

The Government responded by assuring the court and the appellant that the case would proceed to trial on the original rather than the superseding indictment. The Government undertook to meet its burden to prove a wholly independent basis for the prosecution, by filing an *in camera* affidavit of the prosecuting attorney dated November 13, 1980.

Defense counsel objected to an *in camera* affidavit being submitted to the court in an effort to discharge the burden of demonstrating there is no taint. By order of Judge Burke, dated December 31, 1980, the appellant's motion to dismiss was denied without further hearing or statement of findings or conclusions by the court.[5]

On January 9, 1981, the defendant was again arraigned, this time on a single count superseding information which charged the defendant with the offense of simple possession of cocaine on October 1, 1981, in violation of 21 U.S.C. § 844(a). Tantalo pleaded guilty to the misdemeanor charged in the information in keeping with a new plea agreement with the Government, which included the Government's consent to the reservation of the appellant's right to appeal from the decision of the district court denying his motion to dismiss the indictment.[6]

---

**5.** Judge Burke's written order, as it relates to the appellant's motion to dismiss, states merely "The defendant's motion to dismiss the indictment is denied." App. 135.

**6.** At the arraignment on the superseding information, counsel for the Government explained the substance of the plea agreement to the court and went on further to state:

Mr. Rothenberg: Finally, Your Honor, the government's proof with respect to the plea would simply be that on October 1st, 1979, Mr. Tantalo was in fact in possession of some cocaine.

The Court: Are you ready to fix the sentencing date now?

Mr. Rothenberg: Not at this time, Your Honor. The government would request that sentencing be delayed until the completion of Mr. Tantalo's cooperation.

The Court: All right. It is so ordered.

Mr. Cambria: May I address the court, Your Honor? I would like to clarify and make sure that the record is extremely specific with regard to the plea agreement since it was given to you in abbreviated form.

The plea is specifically and expressly conditioned upon the defendant reserving his right with the acquiescence of the government to raise on appeal the questions, namely, of denial of speedy trial and speedy arraignment and as well as a violation of his Fifth Amendment *rights, namely, that* information which he had given under a promise of immunity was used against him, potentially would be used against him, in connection with the very transaction which underlies the current superseding information to which he is pleading, and that this is specifically and expressly conditioned upon this representation with regard to appeal and that is as well supplemented in the agreement which is in

Following the acceptance of the guilty plea, Tantalo testified for the Government in the trials of *United States v. Scacchetti*, Cr. 80–46, and *United States v. Allnutt*, Cr. 79–169, in the United States District Court for the Western District of New York. Due to the intervening death of Judge Burke, as noted above, the appellant appeared before Chief Judge John T. Curtin on September 23, 1981 for sentencing. Imposition of sentence was suspended and the appellant was placed on probation for a period of three years. The present appeal proceeded in keeping with the plea agreement.

### Use of Immunized Testimony

The first question for review is the court's denial of the appellant's motion to dismiss the indictment by reason of the prosecution's actual or potential use of immunized testimony contrary to the protection afforded by the Fifth Amendment. In

examining the question the polestar is *Kastigar v. United States*, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972). The answer is not provided, as the Government urges, by the mere fact that the initial indictment was returned prior to appellant's cooperation and before the immunity grant.

The fact that the appellant testified to matters related to his federal prosecution cast upon the Government the burden of establishing that the evidence to be used to prove his guilt was derived from legitimate sources. *Id.* at 460–62, 92 S.Ct. at 1664–65. The Court in *Kastigar*, after referring at length to its prior opinion in *Murphy v. Waterfront Commission*, 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964), went further to explain:

> This burden of proof, which we reaffirm as appropriate, is not limited to a negation of taint; rather, it imposes on the prosecution the affirmative duty to prove

the form of a letter dated January 8th, 1981, from Mr. Rothenberg, which was as well signed and acknowledged by Mr. Chesworth on behalf of the Monroe County District Attorney's Office, and all of the things stated in that letter together with the things which I have just indicated and Mr. Chesworth's acquiescence are part of and are a condition to the defendant taking this plea, and I would like to have the defendant acknowledge that. Do you acknowledge that, Mr. Tantalo?

Defendant Tantalo: Yes, sir.

Mr. Cambria: And I believe that would complete the report, and we have the agreement here for filing, Your Honor.

The Court: All right.

Mr. Rothenberg: Thank you, Your Honor. We will submit this in a sealed condition to the court.

The Court: Very well.

App. 187–89.

The letter referred to by counsel was written by Mr. Rothenberg and directed to Mr. Cambria. It bears the signature of the Assistant District Attorney for Monroe County and the signed acceptance by the appellant and his attorney. The text of the communication contains the following excerpts:

> This letter is written to confirm the agreement between the government and your client, Albert Tantalo. Mr. Tantalo was named as a defendant in Indictments No. Cr. 79–169. Mr. Tantalo has agreed to cooperate fully and truthfully with the government in connection with the prosecution of Indictments Cr. 79–169, and other matters specified herein. In addition, Mr. Tantalo has

moved to dismiss the indictments against him on the grounds that the indictments violate his Fifth Amendment rights and his right to a speedy trial. These motions have been denied. In light of these proceedings, and in view of Mr. Tantalo's complete and truthful cooperation, the government has reached the following agreement with him:

> • • • •

> 3. His motions to dismiss the indictments against him having been denied, Mr. Tantalo reserves his right to appeal from the decision of United States District Court denying his motion to dismiss the indictment, and the government so agrees.

> 4. Mr. Tantalo agrees to plead guilty to a reduced charge in this case, one-count misdemeanor information charging possession of cocaine, a Schedule II narcotic drug controlled substance, in violation of 21 U.S.C. § 844(a). In return for Mr. Tantalo's complete and truthful cooperation, the government agrees to accept his guilty plea to the misdemeanor information in full satisfaction of any and all charges arising out of the drug conspiracy charged in Indictments No. Cr. 79–169. In addition, the government and the Monroe County District Attorney's Office agree that Mr. Tantalo's guilty plea will be in full satisfaction of any other criminal charges which might have been brought in connection with any criminal activity which Mr. Tantalo disclosed to federal and state officials during the period of his cooperation.

that the evidence it proposes to use is derived from a legitimate source wholly independent of the compelled testimony. 406 U.S. at 460, 92 S.Ct. at 1664.

The statutory proscription [18 U.S.C. § 6002] is analogous to the Fifth Amendment requirement in cases of coerced confessions.... One raising a claim under this statute need only show that he testified under a grant of immunity in order to shift to the government the heavy burden of proving that all of the evidence it proposes to use was derived from legitimate independent sources.

*Id.* at 461–62, 92 S.Ct. at 1665 (footnotes omitted).

The Court's analogy in *Kastigar* of the use of immunized testimony to coerced confessions and its reference in the margin to *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), is instructive on the need for a "taint hearing" which the appellant forcefully requested.

In *Jackson v. Denno* the opinion by Mr. Justice White, in terms of due process, plainly states:

It is now axiomatic that a defendant in a criminal case is deprived of due process of law if his conviction is founded, in whole or in part, upon an involuntary confession, without regard for the truth or falsity of the confession, *Rogers v. Richmond*, 365 U.S. 534 [81 S.Ct. 735, 5 L.Ed.2d 760], and even though there is ample evidence aside from the confession to support the conviction. *Malinski v. New York*, 324 U.S. 401, 65 S.Ct. 781, 89 L.Ed. 1029; *Stroble v. California*, 343 U.S. 181, 72 S.Ct. 599, 96 L.Ed. 872; *Payne v. Arkansas*, 356 U.S. 560, 78 S.Ct. 844, 2 L.Ed.2d 975. Equally clear is the defendant's constitutional right at some stage in the proceedings to object to the use of the confession and to have a fair hearing and a reliable determination on the issue of voluntariness, a determina-

tion uninfluenced by the truth or falsity of the confession. *Rogers v. Richmond, supra.*

378 U.S. 376–77, 84 S.Ct. 1780.

■ Thus the heavy burden cast upon the Government to prove independent sources of the evidence it intends to introduce when it prosecutes a witness who has testified under use immunity is not satisfied by the prosecution's assertion that immunized testimony was not used. Such disclaimer provides an inadequate basis for the denial of a motion to dismiss an indictment. *United States v. Nemes*, 555 F.2d 51, 55 (2d Cir. 1977). In our view the affidavit presented to Judge Burke provides no stronger footing.

We hold that the defendant is entitled to a fair hearing at which the Government must make an affirmative showing that evidence which the Government intended to use at trial on the original indictment was derived "from legitimate independent sources" apart from immunized leads.

The reason for the requirement can be found in this court's opinion in *United States v. Kurzer*, 534 F.2d 511, 516 (2d Cir. 1976) (Feinberg, J.).

The Fifth Amendment, in contrast [to the Fourth], is by its terms an exclusionary rule, and as implemented in the immunity statute it is a very broad one, prohibiting the use not only of evidence, but of "information", "directly or indirectly derived" from the immunized testimony. The statute requires not merely that evidence be excluded when such exclusion would deter wrongful police or prosecution conduct, but that the witness be left "in substantially the same position as if [he] had claimed the Fifth Amendment privilege."

(Citing *Kastigar v. United States*).[7]

Tantalo's motion to dismiss the first indictment on the strength of his testimony under a grant of immunity called upon the

---

7. In pressing his request for a "taint hearing" in the district court, the affidavit of appellant's counsel averred that improper and unconstitutional use of Tantalo's statement was made by the Government "to develop investigatory leads, especially with respect to interviewing potential governmental witnesses and, in fact, in persuading co-defendant Robert DeCarolis to testify against the defendant at trial." App. 118.

trial court to conduct the hearing which the appellant rightfully requested. It was within the district court's discretion to determine whether the taint hearing should be held before trial as in *Kurzer*; during the course of trial as the evidence was presented; after verdict by way of a post-trial motion; or as suggested in *United States v. DeDiego*, 511 F.2d 818, 824 (D.C. Cir.1975), a combination of these alternatives. *See United States v. Frumento*, 552 F.2d 534, 542 n.14 (3rd Cir. 1977) (citing *DeDiego, supra*). Of course, all but the first of the options were precluded by the subsequent negotiated plea to the superseding information; the mandate of a hearing persisted and the question was renewed by way of the plea agreement. The denial of the appellant's motion to dismiss without conducting an evidentiary hearing constitutes error.

■ The superseding indictment was invalid as a matter of law. It was returned by the grand jury after hearing the immunized testimony of Tantalo. Such a showing required its dismissal. *United States v. Hinton*, 543 F.2d 1002, 1010 (2d Cir. 1976). In *Hinton* this court, in an opinion by Judge Waterman, condemned the practice and prescribed the only remedy to be dismissal.

We believe that as a matter of fundamental fairness, a Government practice of using the same grand jury that heard the immunized testimony of a witness to indict him after he testifies, charging him with criminal participation in the matters being studied by the grand jury, cannot be countenanced. The procedure is so fraught with applicable constitutional problems and with the potential for abuse that in our supervisory power over the administration of criminal justice in the district courts of this circuit, *cf. United States v. Toscanino*, 500 F.2d 267 (2d Cir. 1974), we are compelled to conclude that the procedure the Government adopted here falls outside the bounds of permissible prosecutorial conduct. Accordingly, we reverse the conviction of appellant Hinton and instruct that the indictment be dismissed as to her.

*Id.* (footnote omitted). Thus, it was error to deny the appellant's motion to dismiss the superseding indictment.

*Speedy Trial*

We turn to the remaining question reserved in the plea agreement, namely that the appellant's right to a speedy trial was violated under the Speedy Trial Act and the Sixth Amendment.

The appellant's second claim of error based on the Government's alleged violation of his right to a speedy trial under the Speedy Trial Act (18 U.S.C. §§ 3161–3163 (1976, Supp. III 1979 & Supp. IV 1980)) is again frustrated by the court's failure to make findings of fact and state the basis for denying dismissal on this ground. The appellant and the Government presented the district court with affidavits which were directed to the claimed violation of the Speedy Trial Act. As to be expected, these documents generated multiple factual issues that were not resolved by the trial court. They are incapable of resolution within the framework of this appeal.

■ The appellant concedes that the mandatory sanction of dismissal under 18 U.S.C. § 3162 became effective and applies only to cases on informations and indictments filed on or after July 1, 1980. 18 U.S.C. § 3163(c). The indictment that brought on the appellant's arrest was filed October 31, 1979. "This court has uniformly declined to apply sanctions during [the Act's] phase-in period." *United States v. McGrath*, 622 F.2d 36, 39 (2d Cir. 1980). *See also United States v. New Buffalo Amusement Corp.*, 600 F.2d 368, 376–77 (2d Cir. 1979). We find no sufficient reason to depart from that policy in this case.

Beyond that, the appellant has failed to demonstrate that the district court abused its discretion in denying his motion to dismiss under Rule 48(b), Fed.R.Crim.P. *See United States v. DiFrancesco*, 604 F.2d 769, 776 (2d Cir. 1979), *rev'd on other grounds* 449 U.S. 117, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980). *See also United States v. New Buffalo Amusement Corp., supra*, 600 F.2d at 376 n.13.

Tantalo further requests this court to apply the critical factors in the Sixth Amendment balancing test prescribed in *Barker v. Wingo,* 407 U.S. 514, 530, 92 S.Ct. 2182, 2191, 33 L.Ed.2d 101 (1972): "Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant" (footnote omitted). The Court went on to state:

> We regard none of the four factors identified above as either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant. In sum, these factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process. But, because we are dealing with a fundamental right of the accused, this process must be carried out with full recognition that the accused's interest in a speedy trial is specifically affirmed in the Constitution.

*Id.* at 533, 92 S.Ct. at 2193 (footnote omitted).

Earlier in the Court's opinion by Mr. Justice Powell, it is written:

> We reject, therefore, the rule that a defendant who fails to demand a speedy trial forever waives his right. This does not mean, however, that the defendant has no responsibility to assert his right. We think the better rule is that the defendant's assertion of or failure to assert his right to a speedy trial is one of the factors to be considered in an inquiry into the deprivation of the right. Such a formulation avoids the rigidities of the demand-waiver rule and the resulting possible unfairness in its application. It allows the trial court to exercise a judicial discretion based on the circumstances, including due consideration of any applicable rule.

*Id.* at 528–29, 92 S.Ct. at 2191 (footnote omitted).

More recently, during the pendency of this appeal, the Court has again had occasion to consider the Sixth Amendment right to a speedy trial.

The speedy trial guarantee is designed to minimize the possibility of lengthy incarceration prior to trial, to reduce the lesser, but nevertheless substantial, impairment of liberty imposed on an accused while released on bail, and to shorten the disruption of life caused by arrest and the presence of unresolved criminal charges.

*United States v. MacDonald,* —— U.S. ——, ——, 102 S.Ct. 1497, 1502, 71 L.Ed.2d 696 (1982) (Burger, C. J.).

It is clear the considerations involved in applying the critical balancing test are confided to the trial court's discretion. The balancing and counterbalancing factors can hardly be settled on appeal in the absence of definitive findings by the trial court. However, enough appears in the record presented to indicate the "unsatisfactorily severe remedy" of dismissal was not mandated.

■ The path of the prosecution was necessarily slow and winding to allow the interests of the Government, as well as those of the defendant—"to proceed cautiously and deliberately" before advancing to the public trial stage. *See id.* at ——, 102 S.Ct. at 1503 (Stevens, J., concurring). The crime involved a serious, complex conspiracy charge with multiple defendants; some were in fugitive status. The appellant was released on bail soon after the appellant's arrest.

The delay from the period of his arrest in the Eastern District of Virginia on November 7, 1979 to the date of the Government's motion to set a trial date on July 8, 1980, was not excessive. The motion to dismiss was not presented to the trial court until the following November. During the intervening period the appellant's cooperation continued concurrently with on-going plea negotiations. It is clear that these efforts were for the mutual advantage of the prosecution and the defendant. Similarly, they were shielded from public exposure for reasons of security that were mutually beneficial to the interests of the cooperating witness and the Government.

Some of the delay is attributable to the change in defense counsel. It appears that the complexity of the motion papers presented to the court in November 1980, shortly before the scheduled trial date, persuaded Judge Burke to find that the interests of justice required a further continuance of the trial in accord with the provisions of 18 U.S.C. § 3161(h)(8).

In summary, we hold the appellant's assignment of error for violation of his right to a speedy trial is rejected. The district court's ruling which upheld the indictments, without calling upon the government to establish that the evidence it proposed to present at the trial was untainted by the appellant's immunized testimony, was in error.

The cause is remanded to the district court to permit the appellant, if he so elects, to withdraw his guilty plea to the superseding information in keeping with the conditions of the plea agreement.[8] In the event the plea is withdrawn and the prosecution proceeds to trial, the district court is directed to conduct a hearing at the appropriate stage of the proceedings to determine whether the evidence the Government proposes to use was derived from legitimate sources wholly independent of his prior immunized statements and testimony in related federal and state proceedings.

---

**8.** The written plea agreement referred to in Note 6, *supra* contains no provision that should apply in the event Tantalo should prevail on appeal. The court adopts the procedure proposed by the Advisory Committee on Criminal Rules of the Judicial Conference of the United States for amendment to Fed.R.Crim.P. 11 by adding a new subsection (a)(2). The proposed amendment has been circulated to bench and bar and is fully explained in the Advisory Committee Note reported in 91 F.R.D. 289, 320–25. The text of the proposed amendment provides:

*Rule 11. Pleas*
(a) ALTERNATIVES

. . . . .

(2) *Conditional pleas. With the approval of the court and the consent of the govern-*

*ment, a defendant may enter a conditional plea of guilty or nolo contendere, reserving in writing the right to appeal from the adverse determination of any specified pretrial motion. If the defendant prevails on appeal, he shall be afforded the opportunity to withdraw his plea.*

91 F.R.D. at 319. This court has expressly approved conditional guilty pleas. *See United States v. Burke*, 517 F.2d 377, 379 (2d Cir. 1975). *Cf. United States v. Thibadeau*, 671 F.2d 75, 80–81 (2d Cir. 1982) (reaffirming approval of conditional pleas, but cautioning against acceptance of pleas subject to numerous conditions, especially conditions raising claims not properly reviewable absent a full trial record).