**UNITED STATES of America,**

v.

**Arthur M. BLAU, Defendant.**

**No. 95 Cr. 556 (DAB).**

United States District Court,
S.D. New York.

Jan. 17, 1996.

Mary Jo White, United States Attorney for Southern District of New York, New York City (Michael A. Rogoff, Celeste L. Koeleveld, Hector Gonzalez, Assistant United States Attorneys, of counsel), for Government.

Robert S. Franklin, P.C., White Plains, NY (Robert S. Franklin, of counsel), for Defendant.

## MEMORANDUM AND ORDER

BATTS, District Judge.

On June 26, 1995, Arthur Blau, the Defendant, was charged with a three-count Indictment alleging violations of 18 U.S.C. § 1954.[1] (Robert S. Franklin Aff. ("Franklin Aff.") ¶ 2.) Defendant moves for dismissal of the Indictment on the ground that the Government used and/or derivatively used information from the Defendant which he was compelled to provide pursuant to immunity granted under 18 U.S.C. § 6002 *et seq.*, or in the alternative for a hearing pursuant to *Kastigar v. United States*, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972); and for an Order requiring the Government to produce an additional Bill of Particulars.

## I.  BACKGROUND

Beginning in or about February 1992, the United States Attorney's Office for the Southern District of New York, the Federal Bureau of Investigation ("FBI"), the Department of Labor ("DOL") and the Internal Revenue Service ("IRS") commenced an investigation into certain real estate transactions involving the Mason Tenders District Council of Greater New York's ("Mason") trust funds. (Gov't Mem. Law at 2; Franklin Aff. ¶ 3.) The investigation resulted in the issuance of numerous grand jury subpoenas, (Gov't Mem. Law at 3; Franklin Aff. ¶ 3), including a 34–count Indictment, issued in September 1992, charging Ron Miceli, Frank Lupo and Charles Trentacosta with racketeering, conversion of pension fund assets, mail fraud and money laundering. (Gov't Mem. Law at 2.) The charges centered on the use of Mason pension funds to purchase real estate in Manhattan and Brooklyn at grossly inflated prices from associates of the Genovese Crime Family. (*Id.*) The bloated prices paid by the pension fund for the real estate were supported by false appraisals prepared by individuals associated with one of the organized crime associates. (*Id.*) Assistant United States Attorney Orin Snyder and FBI Special Agent Michael Brooks were assigned to the case. (*Id.;* Franklin Aff. ¶ 3.)

Part of the investigation of Mason included an interview of the Defendant. (Gov't Mem. Law at 2.) The relevant events leading to that interview are as follows: Defendant was a partner in Blau, Soloway, Goldstein & Co., an accounting firm which provided services to Mason since 1967. (*Id.;* Franklin Aff. ¶ 4.) On March 16, 1992, Defendant was served with a grand jury subpoena. (Franklin Aff. ¶ 4.) He hired the firm of Bernstein & Maffeo to represent him. (*Id.*) They contacted AUSA Snyder seeking information regarding the subpoena. (*Id.* ¶ 5.) Upon learning of the background of the subpoena, counsel informed AUSA Snyder that the Defendant would invoke his Fifth Amendment

---

**1.** Count One of the Indictment reads in part that the Defendant "unlawfully, wilfully and knowingly did directly and indirectly give, offer, and promise to give and offer a fee, kickback, commission, gift, loan, money and thing of value, to wit, thousands of dollars in cash to a trustee of an employee welfare benefit plan and an employee pension benefit plan, to wit, the benefit plans of the Mason Tenders District Council of Greater New York, because of and with intent to influence the actions, decisions and other duties of said trustee relating to matters concerning the benefit plans." Count Two is the same, except that it applies to a different time period. Count Three is the same, except that it applies to a different plan.

rights when called before the grand jury. (*Id.* ¶ 5.) The Defendant wrote a letter to AUSA Snyder which was accepted in lieu of his appearance before the grand jury. (*Id.* Ex. C.)

On April 3, 1992, a subpoena duces tecum was served on the Defendant. (*Id.* ¶ 6.) Upon discussion with AUSA Snyder it was agreed the subpoena would be addressed to Blau, Soloway, Goldstein & Co. (*Id.*) On August 28, 1992, a further subpoena was served on the Defendant requiring handwriting samples and fingerprints. (*Id.*) Defendant appeared, but Special Agent Brooks did not take any samples. (*Id.*)

On September 9, 1992, by letter from AUSA Snyder, Defendant was informed that he was now a target of the investigation. (*Id.* ¶ 7.) On September 17, 1992, a meeting was held and was attended by AUSA Snyder, representatives of the DOL and IRS, and Defendant's attorney. At that meeting it was suggested the Defendant make a proffer. (*Id.* ¶¶ 8–9.) On October 6, 1992, the Government sought a court order of immunity for the Defendant which was granted by Judge Kevin Thomas Duffy. (*Id.* ¶ 10.) Pursuant to the Order, Defendant attended one debriefing session, conducted by AUSA Snyder and Special Agent Brooks, on October 28, 1992. (*Id.* ¶ 11; Gov't Mem. Law at 2.)

During the debriefing session Defendant provided information regarding the accounting services performed for Mason since 1967. (Franklin Aff. ¶ 12.) Defendant explained that he acquired the Mason account through the employer trustees of the Bricklayers union. (*Id.*) Defendant discussed his relationship with both Gaspar and Frank Lupo, and any connection they had with organized crime. (*Id.* ¶¶ 12, 13.) The bulk of the debriefing, however, dealt with details of the Mason purchase of real estate, including the method of acquisition, appraisals, and forms used in the accountings performed by Defendant's firm. (*Id.* ¶ 14; Gov't Mem. Law at 3.) It appears the Defendant made no incriminating statements or admissions about his involvement in the real estate transactions, or any other criminal activity. (Gov't Mem. Law at 3; Franklin Aff. ¶¶ 12–15.)

Subsequent to the proffer, Defendant supplied, pursuant to subpoena, his personal diaries and telephone logs (collectively "diaries") under the assumption that they would be covered by the grant of immunity.[2] (Gov't Mem. Law at 3; Franklin Aff. ¶¶ 16–17.) The Defendant claims that it was the evidence in the diaries regarding meetings with Lupo, Roger Levin and others, that was used by the Government to bring the current Indictment against the Defendant. (Franklin Aff. ¶ 18; Franklin Reply Aff. ¶ 10.)

In January 1993, Lupo and Trentacosta pled guilty to participating in racketeering activities. (Gov't Mem. Law at 3; Franklin Aff. ¶ 20.) Miceli and James Massera also pled guilty to a superseding indictment issued in April 1993. (Gov't Mem. Law at 3.)

In May 1993, Defendant was interviewed by DOL. (Franklin Aff. ¶ 21.) He was questioned about his involvement in the accounting practices regarding another union pension fund, the Carpenters funds, and about his dealings with Levin. (*Id.* ¶ 22.)

The criminal investigation thereafter remained dormant until early 1994. (Gov't Mem. Law at 3.) At that time, Lupo began providing information to the Government, including information regarding the Defendant. (Gov't Mem. Law at 3–4.) That information, along with additional information, led to the three-count Indictment of the Defendant on June 26, 1995,[3] which charges the Defendant with bribery. (Gov't Mem. Law at 4.) At the time Lupo began providing information, AUSA Snyder and Special Agent Brooks no

---

2. The Government, for the purposes of this motion, has not challenged the Defendant's claim of immunity regarding the diaries. Therefore, the Court will proceed under the assumption that the diaries are immunized. (Gov't Mem. Law at 11 n. 3.)

3. In September 1994 Levin pled guilty to federal criminal violations concerning Mason. (Frank-

lin Aff. ¶ 23.) Furthermore, in September 1994, a civil suit was filed by the Government against Mason, also naming the Defendant. (*Id.* ¶¶ 24–25.) The AUSAs heading the civil suit obtained an order unsealing the grand jury investigation and used it to help construct the civil case. (*Id.* ¶ 27.)

longer were involved in the Mason investigation. (*Id.* at 5.) The Government represents that neither Snyder nor Brooks participated in the Lupo debriefings, nor communicated the information Blau had provided to anyone involved in the Lupo debriefings. (*Id.*) The Government further represents that AUSAs Koeleveld and Gonzalez, and Investigator Kenneth McCabe were not aware of the October 1992 proffer until the filing of this motion, nor did they use Defendant's diaries. (*Id.*)

For the reasons stated below, the Defendant's Motion is denied in part and granted in part.

## II. DISCUSSION

### A. Defendant's Motion to Dismiss the Indictment is Denied

■ Defendant does not allege that the information he provided at the proffer on October 28, 1992, was used by the Government to investigate the current charges. Rather, Defendant argues that the diaries he provided on November 17, 1992, "undoubtedly allowed the investigators to focus their inquiry or characterize Mr. Blau in a particular way which has impacted on the government's decisions regarding the investigation and prosecution of Mr. Blau." (Franklin Aff. ¶ 18.) Furthermore, Defendant alleges that the United States Attorney's Office, Civil Division, by obtaining an order unsealing the grand jury investigation and using it to institute a civil action shows that "there has been obvious concerted action between and among both divisions of the U.S. Attorney's office, the FBI, IRS as well as the Department of Labor." (Franklin Aff. ¶ 27.) From this the Court assumes Defendant is arguing that it was inevitable that the information provided in the diaries was used to bring the current Indictment.

In *Kastigar v. United States*, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972), the Court held that

> [o]nce a defendant demonstrates that he has testified, under a state grant of immunity, to matters related to the federal prosecution, the federal authorities have the burden of showing that their evidence is

not tainted by establishing that they had an independent, legitimate source for the disputed evidence. [Murphy v. Waterfront Comm'n], 378 U.S. [52], ... 79 n. 18, 84 S.Ct. 1594, 1609 n. 18, 12 L.Ed.2d 678 [ (1964) ]. This burden of proof ... is not limited to a negation of taint; rather, it imposes on the prosecution the affirmative duty to prove that the evidence it proposes to use is derived from a legitimate source wholly independent of the compelled testimony.

*Id.* at 460, 92 S.Ct. at 1665 (quoting where indicated, *Murphy v. Waterfront Comm'n*, 378 U.S. 52, 79 n. 18, 84 S.Ct. 1594, 1609 n. 18, 12 L.Ed.2d 678 (1964)).

■ The Defendant has shown, and the Government does not deny, that the Defendant gave information pursuant to immunity at a proffer on October 28, 1992, and in diaries turned over on November 17, 1992. Before the Court delves into the question of whether there is an independent source of evidence for the Indictment against the Defendant, other than the compelled information, the Defendant must show that the immunized information is factually related to the federal charges. *Kastigar*, 406 U.S. at 460, 92 S.Ct. at 1665; *United States v. Nanni*, 59 F.3d 1425 (2d Cir.1995) ("once the defendant shows that, under a grant of immunity, he has testified to matters related to the prosecution, the government has the burden ..."); *United States v. Tantalo*, 680 F.2d 903, 907 (2d Cir.1982) ("[t]he fact that the appellant testified to matters related to his federal prosecution cast upon the Government the burden of establishing that the evidence to be used to prove his guilt was derived from legitimate sources"); *United States v. Nemes*, 555 F.2d 51, 55 (2d Cir. 1977) (before a *Kastigar* hearing is held the "district judge should first require [the Defendant] to demonstrate that she did in fact testify before the state grand jury under immunity on matters related to the federal prosecution").

Defendant does not allege that he made any statement regarding bribes in his diaries or proffer. Rather he alleges his diaries were used as a means to obtaining further information regarding the bribes. (Franklin

Reply Aff. ¶ 10.) The only example of useful information the Government arguably could have used was the Defendant's scheduled meetings with Lupo, among other individuals. (*Id.*) However, the Court cannot conclude, based on what has been presented to it,[4] that the testimony Defendant gave under immunity is related to the federal prosecution. Although both the compelled information and the crimes charged in the Indictment occurred in the same time span or close proximity, and involve some of the same individuals,[5] without more, the Court has not been shown that the immunized evidence "relates to" the crimes charged in the Indictment. Thus, the Defendant has not met its initial burden.[6] The Court, therefore, need not decide whether the Government has an independent source of evidence for bringing the current Indictment. Accordingly, Defendant's Motion to Dismiss the Indictment is DENIED and Defendant's Motion for a *Kastigar* Hearing is DENIED at this time.

### B. Bill of Particulars

The Defendant has also requested a more detailed response from the Government to his Bill of Particulars. The Government has provided, in its response papers, much of the information the Defendant sought. However, the Government has failed to provide the form of payment in Count Two and the places at which the payments occurred in all Counts. The Government shall supply this information.

**4.** For example, the Court has not been provided with a transcript of what the Defendant said at his proffer, nor has the Court seen the diaries. Hence, it is difficult to evaluate the merits of the Defendant's motion.

**5.** Defendant answered questions regarding Lupo and Levin who are now witnesses against him.

**6.** The issue in the case law more often turns on the Government's burden of showing they had an independent source of evidence for the indictment. One way the Government can meet its burden is to show they did not use the information provided by the Defendant. Here, based on the submissions, it appears Defendant did not provide the Government with any useful information. In that case, the Defendant would not be entitled to a dismissal based on the allegation that the Government used immunized information. *See United States v. Gallo*, 863 F.2d 185, 190 (2d Cir.1988), *cert. denied*, 489 U.S. 1083,

### III. CONCLUSION

IT IS ORDERED that:

1) The Defendant's Motion for Dismissal of the Indictment, sought on the ground that the Government improperly used immunized testimony, is DENIED;

2) The Defendant's Motion requesting a *Kastigar* hearing is DENIED at this time;

3) The Defendant's Motion for a Bill of Particulars is GRANTED in part. The Government shall provide the Defendant with the places that the alleged bribes took place in all three Counts and the form of payment alleged in Count Two; and

4) In light of this Memorandum and Order, the Government is to provide the information to the Defendant on or before January 29, 1996. The parties are to appear for a status conference on Monday, February 5, 1996, at 10:00 a.m. In the interests of justice, the time from the date of this Order up to and including February 5, 1996, is tolled, pursuant to 18 U.S.C. § 3161(h)(8)(A).

SO ORDERED.

109 S.Ct. 1539, 103 L.Ed.2d 843 (1989) (the court found the immunized testimony contained nothing that the government could use); *United States v. Anzalone*, 555 F.2d 317, 321 (2d Cir.), *cert. denied*, 434 U.S. 1015, 98 S.Ct. 732, 54 L.Ed.2d 760 (1978) (the court found that no leads could have been gained from information that altogether denied complicity); *United States v. Bianco*, 534 F.2d 501, 511 (2d Cir.), *cert. denied*, 429 U.S. 822, 97 S.Ct. 73, 50 L.Ed.2d 84 (1976) (the court discusses complete absence of the facts underlying the indictment discussed at the grand jury). Here, the Defendant does not allege he provided information about bribes, or anything related to the bribes, in his proffer or diaries. Whether he met with Frank Lupo or any other individual on any particular day, without anything else, cannot be found to be useful evidence.